W. R. BRIGHT et al v. TENNESSEE ELECTRIC POWER CO.

Eastern Section.    May 22, 1926.

No petition for certiorari was filed.

1. Reformation of instruments.    Party is entitled to have a conveyance of right-of-way set aside where he was induced to sign it believing that the right-of-way was across different land than that upon which it was later actually built.

   In an action to have the conveyance of a right-of-way for an electric power line set aside on the ground of misrepresentation where the evidence showed that the agent for the power company had advised the grantor that the line would go across hill land which was practically worthless, and later the line was built across fertile land, held evidence sufficient for a court in equity to set aside the conveyance.

2. Appeal and error.    Where defendant below had plenty of time to secure evidence held not error for court to refuse to open case to allow it to introduce more evidence.

   In an action to set aside the conveyance of a right-of-way and assess damages where the plaintiff took depositions to prove its case early in the year of 1924, and that defendant had from then until December, 1925, to take proof and did not, held it was not error for the trial court to refuse to open case and allow defendant to offer more proof.

3. Damages.    $1500 for right-of-way for power line across farm land held excessive.

   In an action to recover damages for the right-of-way of a power line across farm land, damages reduced from $1500 to $750.

Appeal from Chancery Court, Knox County; Hon. Chas. Hays Brown, Chancellor.

Modified and affirmed.

Green, Webb and Cowan, of Knoxville, for appellant.

Jennings, Saxton and Wright, of Knoxville, for appellee.

THOMPSON, J.    Mr. W. R. Bright owned and lived on a farm containing about 150 acres situated in the 16th Civil District of

Knox county, and about seven miles from Knoxville. The land lies in the shape of the letter "L" turned upside down. A long narrow strip of the land runs north and south, and at the north end of this strip a square tract extends to the east. This square tract is on the side or slope of a ridge and is not as fertile or valuable as the long strip. There are ridges both north and south of the farm, and each ridge has a low place or gap in it. The gap to the north is called Beaver Gap, and the one to the south is called Dry Gap. A straight line between these two gaps would run through the square tract of land but would be 100 or 150 yards east of the long narrow strip which runs north and south.

Mr. Ogg owns the land east of the narrow strip and south of the square, and the straight line above mentioned would traverse his land instead of the narrow strip.

A pike road known as Emory Pike extends east and west and intersects the narrow strip, and Ogg and Bright run a store on the north side of this pike and about 100 or 150 yards east of the narrow strip. The straight line above mentioned would run very close to this store, but whether on the east or west side does not appear.

On August 10, 1922, Bright and wife leased about 16 acres of the narrow strip to their son, Jack T. Bright, who planted and attended to a fruit orchard on it. But Jack T. Bright did not record this lease, and he did not move onto and live on the 16 acres.

The Tennessee Electric Power Company, a public service corporation, in the necessary and proper expansion of its business desired to build and construct a high powered transmission line from one of the gaps above mentioned to the other. Under the facts as shown by the record it clearly had the power to condemn a right of way for this transmission line, but it desired if possible to acquire the right of way by purchase or contract from the land owners. On July 30, 1923, Mr. John A. Duncan, agent and attorney for the Power Company, procured Mr. Bright and his wife to execute (before a Notary Public) and deliver to him the following paper:

"STATE OF TENNESSEE.
"COUNTY OF KNOX.
"KNOW ALL MEN BY THESE PRESENTS:

"That W. R. Bright and wife S. J. Bright, of Knox county, Tennessee, hereinafter called the party of the first part, for and in consideration of the sum of one dollar, paid by The Tennessee Electric Power Company, a corporation, hereinafter called the party of the second part, and the other considerations hereinafter mentioned, do hereby grant, sell and convey unto the party of the second part, its successors and assigns, the perpetual right, privilege and ease-

ment to from time to time enter, and to erect, maintain, repair, rebuild, operate and patrol one or more lines of poles and towers, and wires or cables strung upon the same and from pole to pole and from tower to tower, for the transmission of electric current, with all necessary foundations, anchors, guys and braces, to properly support and protect the same, upon, over and across the lands owned by the party of the first part, in the 16th Civil District of Knox county, Tennessee, bounded and described as follows:

"Bounded on the North by lands of Mrs. Gaut

"Bounded on the East by lands of W. H. Ogg

"Bounded on the South by lands of Mrs. Tindle

"Bounded on the West by lands of J. T. Thompson.

"This is not a conveyance of the fee in said land but only the right, privileges and easements herein set forth.

"The exact location of said wires, cables, poles, towers, lines, etc., is to be selected by the party of the second part after its final surveys have been completed but all of said poles and towers shall be erected within 50 feet on either side of a center line to be surveyed and located.

"The party of the second part shall before operating said line of wires, pay or tender to said party of the first part the further sum of five dollars ($5) for each pole, and ten dollars ($10) for each tower erected on said premises. Said sums to cover all damages of every character incidental to the entry, construction and maintenance of said lines, except as hereinafter provided.

"The party of the second part may trim or remove such trees and underbrush as in its judgment may in any way interfere with or endanger said lines or the operation thereof when erected, and shall pay the party of the first part $6 per thousand feet board measure for all merchantable timber so cut or destroyed.

"Party of second part shall also pay a fair market value for all crops damaged or destroyed and pay all damages done to fences.

"The party of the first part may cultivate the land under said lines of wires in such a way as not to interfere with the rights and privileges hereby granted or the uses and purposes herein set forth, and the party of the first part (except as above provided) shall not have any right to, or claim for damages of any nature against the party of the second part resulting from the exercise and enjoyment of the rights and privileges hereby granted.

"The party of the first part covenants that they are lawfully seized and possessed of said real estate; that it is unencumbered and that they have a good and lawful right to sell and convey the rights and privileges herein set forth, and will forever warrant and defend the title to the same against the lawful claims of all persons whatsoever.

"In Witness Whereof, the party of the first part have hereunto set hand, affixed seal and delivered these presents, this 30th day of July, 1923.

"W. R. Bright

"S. J. Bright."

As stated, this instrument was executed before a Notary Public and was delivered to Mr. Duncan. It was recorded in the Register's Office of Knox county on September 22, 1923. Neither Mr. Duncan nor any other agent of the Power Company had any notice or knowledge that Jack Bright had leased 16 acres of the strip or that he had any interest in it. And on the same day that Duncan took this instrument from Bright and wife, he took a similar one from Ogg.

The Power Company made several surveys of the proposed line, the first one being east of the narrow strip, but the last one being on the strip and about 13 feet west of its eastern boundary line. It then began preparations to build the line and on November 3, 1923, W. R. Bright and Jack T. Bright filed the original bill in this cause seeking an injunction principally upon the ground that Duncan had represented, at the time he took the above quoted instrument, that the line would only traverse the square of land and would not traverse the narrow strip, etc., and that a fraud had been and was being perpetrated on them. We do not think it necessary to state in full or in detail the allegations of the bill, but the prayer was that the above quoted instrument be set aside, cancelled and annulled and that the defendant be enjoined from entering upon the land and constructing the line.

A temporary injunction was issued, but the Power Company filed an answer denying and meeting all of the equities of the bill, and then stating as follows:

"Defendant here and now offers to execute a good and solvent indemnity bond, conditioned that defendant will abide by and perform the final judgment of the court in this cause on the final hearing, in such a sum as your Honor may prescribe. By the dissolution of the injunction in this cause, and by the execution of such a bond, defendant will be permitted to carry on its said enterprise without further loss to it, and the complainants will be guaranteed the payment of any recovery which they might have in this cause. Defendant avers that the complainants, having brought it into this court, and having chosen this forum, that this court should and will assume jurisdiction of the cause for all purposes."

Such a bond in the sum of $2500, was executed by the defendant, the injunction was dissolved on November 21, 1923, and the defendant proceeded to build the line.

The parties took their proof, the complainants' proof covering the question of the amount of the damages, value of the land, etc.,

as well as the question of fraud in the procuring of the execution of the above instrument. The cause was passed from time to time but was finally heard in December, 1925, and a decree was rendered in favor of complainants for $1500, and the costs of the cause.

The defendant then filed a petition to rehear, particularly asking that the case be reopened and that it be permitted to introduce proof to the effect that complainants had not been damaged, etc., to the extent of $1500. In support of this petition it filed the affidavits of two real estate men to the effect that the damages, etc., done to complainants did not exceed $250 or $300. This petition was overruled and disallowed; and from the final decree the defendant has appealed to this Court and assigned error.

The material part of the decree (which contains the finding of fact) is as follows:

"3. That prior to the execution of the said right-of-way or easement, defendant's agent came to see the complainant, W. R. Bright, and requested him to grant a right-of-way for said poles, towers and wires through his (Bright's) farm, and indicated to complainant Bright by a gesture of the arm that the said poles, towers, wires and right-of-way would run through that certain portion of complainant's farm lying on Copper Ridge, (the square) which was of very little value, and that the complainants believed when they signed the said right-of-way that the same would extend through that portion of the farm so indicated by the defendant's agent, and that, relying upon said representations and assurances thus made by the said agent, complainants signed the said right-of-way or easement grant without paying any particular attention to its language.

"4. That after securing the said written right-of-way or easement, instead of constructing its power line through that portion of the farm which they represented they would construct it through as above indicated, constructed the same through an entirely different portion of complainants' farm, which portion thus used was quite valuable and which was seriously damaged by reason of the construction of said power line through the same.

"5. That complainants in signing said right-of-way or easement believed and relied upon the representations made by defendant's agent to the effect that the said power line would be constructed through that certain portion of complainants' farm which was of little value; and they also believed and relied upon the statements made by defendant's agent that electric lights would in time be furnished to complainants and others in that vicinity.

"The court finds that said representations thus made were untrue and that they misled the complainants into signing a right-of-way or easement which they would not otherwise have signed, and

that the consideration contracted by defendant to be paid for the said right-of-way is wholly inadequate and insufficient and not in proportion to the value of the land taken, or the damage done.

"6. The court, therefore, finds that the complainant is entitled to recover from the defendant, but owing to the fact that defendant has already taken and occupied complainants' land, the court finds and decrees that complainants' only remedy is to recover the value of the land so taken, together with damages.

"The court further finds that there have been no incidental benefits, or benefits of any kind, accruing to the complainants by reason of the construction of the power line through complainants' farm.

"Upon consideration of the testimony as to the value of the land and the amount of damages, the court fixes the same at the sum of fifteen hundred dollars ($1500) and;

"It is, therefore, accordingly ordered, adjudged and decreed: That complainants have and recover of and from the defendant and American Surety Company, surety on the bond executed in this cause to indemnify the complainants against loss or damage, the sum of fifteen hundred dollars ($1500) and all the costs of the cause, for which execution may issue."

The first three assignments of error question the correctness of the foregoing finding of fact and decree down to that part which fixes the value of the land taken and the damages sustained by complainant, etc., at $1500. We are not impressed with complainants' contention that he was led to believe that he would receive a benefit from his granting to the defendant a right-of-way, in that he would soon have electric lights on his farm. If this were the only ground upon which relief was sought we would not hesitate to reverse the decree, because we think the weight of the evidence is that Duncan told him that he could not get lights from the line as the current or voltage was too high. It is true that Duncan did tell complainant that lights would follow at some time in the future, but we do not think that such a statement or prediction would constitute a sufficient ground upon which to set aside the conveyance of the right-of-way. Neither do we think that the inadequacy of the consideration, if standing by itself, would constitute a sufficient ground for setting aside the instrument or conveyance.

But we do think that Duncan represented to complainant that the line would only go through the square area of land and would not touch the narrow strip. Certainly the evidence shows that what Duncan said and did in the way of pointing and indicating amounted to a statement that the line would only run through the square, and in fact the first survey did go only through the square. And we are thoroughly convinced that had Mr. Bright been given to understand that the line might traverse the narrow strip he would

not have executed the conveyance. He filed the injunction suit as soon as he learned that the defendant intended to construct the line on the strip. The land in the strip was more fertile and valuable than the land in the square and by running the line on the strip more poles or rather towers were put on his land. A part of the square was in timber while none of the strip was, and the instrument or conveyance provided that he should receive pay for all timber cut and could also keep the timber after it was cut, and as stated, we think it clear from the record that he would not have signed the conveyance had he been given to understand that the line might be built on the strip.

[We do not mean to say that we think Mr. Duncan intentionally misled and deceived complainant or that he deliberately perpetrated a fraud upon complainant at the time he induced complainant to execute the conveyance. In fact, the plain inference from the record is that the defendant only went upon the strip after it encountered difficulty in procuring rights-of-way from other land owners, and in order to avoid going upon their land. But the effect upon complainant was the same. He was induced to sign the instrument or conveyance (without reading it) upon a clear misstatement of a most material and vital fact, and the misstatement was just as injurious to him as it would have been had it been made with an actual present intent to deceive. For this reason, coupled with the fact that the line is more injurious on the strip than it would have been at the other location, we think complainant was entitled to have the instrument or conveyance set aside. Wells v. Holley, 145 Tenn., 345; L. & N. R. R. Co. v. McKay, 133 Tenn., 507; Lewis v. McLemore, 10 Yerger, 205; Bankhead v. Alloway, 6 Cald., 56; Phillips v. Hollister, 2 Cald., 269.

The sixth assignment of error raises the question that the court should have granted defendant's petition to reopen the case and permit defendant to introduce proof as to the value of the land taken and the amount of complainants' damage; and the fourth assignment of error makes the question that the amount allowed, i. e. $1500, was excessive.

We do not think the court was in error in not reopening the case. Defendant had itself offered to give the bond so that complainant could take a judgment against it if he could show a right to set aside the conveyance of the right-of-way and prove the value of the land taken and the amount of his damages; and upon the strength of this bond the injunction was dissolved and the defendant permitted to construct the line. From that time on there was nothing left in the suit except the issue as to whether complainant was entitled to set aside the conveyance and if so then the value of the land taken and the amount of damages sustained. As stated, this

bond was given and the injunction dissolved on November 21, 1923. The complainants took their proof (including that covering the value of the land taken and the amount of the damages) in the early part of the year 1924, and defendant had from then until December, 1925, to take whatever proof it desired on the question. But instead of taking such proof defendant proceeded into the trial. Under these circumstances we do not think the trial court can be put in error for not having reopened the case with the right to the defendant to take proof.

But we do think the amount allowed i. e. $1500 was excessive. The land is used only for farming purposes and is seven miles from Knoxville. There are only seven or eight towers on it. These towers are the "A" type and do not take up a great amount of land space. The line is practically permanent, that is, it will seldom be necessary for the defendant's employees to go upon it and make repairs, etc. The wires are too high to interfere with the land for farming purposes. Nor will they interfere with complainants' orchard. It is true that at the point where the pike road intersects the strip the amount of building space on the pike will be restricted somewhat, but it does not appear that complainant ever had any bona fide intention of building there, or that as a building site the land abutting the pike is materially more valuable than the balance of the strip. The line as constructed does not interfere with any building or structure now on the land, and it is located within 13 feet of the eastern boundary line.

Notwithstanding the exaggerated and extreme values which complainant and his witnesses who were his neighbors and friends put upon the land and the damages sustained by complainants, we think the sum of $750 would be full and ample compensation.

A decree will be entered setting aside the decree of the lower court and allowing the complainants a recovery against The Tennessee Electric Power Company, as principal, and the American Surety Company, as surety, for the sum of $750, with interest from November 21, 1923, and the costs of the cause including the appeal.

Portrum and Snodgrass, JJ., concur.