# BOVAY et al. v. BOVAY.—181 S. W. (2d) 157.

Western Section. November 3, 1943.

Petition for Certiorari denied by Supreme Court, March 4, 1944.

Wils Davis and W. H. Fisher, both of Memphis, for plaintiffs in error.

McDonald, McDonald & Knapp and John A. Osoinach, all of Memphis, for Ruby Mae Bovay.

KETCHUM, J. The bill in this case was filed by Mrs. Ruby Mae Bovay, widow of George B. Bovay, deceased, to enjoin the defendant John Hancock Mutual Life Insurance Company from paying to Mrs. Mary A. Bovay the proceeds of a life insurance policy for $5000 on the life of George B. Bovay in which the complainant was designated as beneficiary; and to have set aside as fraudulent an attempted designation of the said Mrs. Mary A. Bovay, or in the the event of her prior death, the defendant Martha Jeanne Bovay, as such beneficiary, which attempted designation was alleged to have been secretly obtained from the insured by the defendants Harry E. Bovay and Mary A. Bovay, his father and mother, by fraud and undue influence, during his last illness, and while he was practically in a dying condition, and under the influence of opiates, and wholly without mental capacity to execute such an instrument.

Shortly after the filing of the bill a stipulation was entered into by all of the parties whereby the defendant insurance company admitted its liability under the policy for the sum of $4965.64 and expressed its willingness to pay said sum to the party finally adjudged to be entitled thereto; and the other parties stipulated that the insurance company might hold said sum pending the litigation and pay the same to the party finally decreed to be entitled thereto.

The defendants Harry E. Bovay, Mary A. Bovay and Martha Jeanne Bovay answered the bill denying all the charges of fraud and undue influence and asserting that the insured George B. Bovay was in the full possession of his mental faculties at the time he designated his mother and sister as the beneficiaries under said policy, and that he directed that the change be made of his own motion and without any suggestion from his parents.

A jury was demanded both in the bill and in the answer, and there was a trial before a jury upon the following issues:

"1. Was George B. Bovay, on September 18 and 19, 1942, lacking in mental capacity necessary to change the beneficiary of the life insurance policy involved in this cause?

"2. Did the defendants, Harry E. Bovay and Mrs. Mary A. Bovay, or either of them, on or about September 18 or 19, 1942, by fraud, duress or undue influence, cause George B. Bovay to sign a paper writing for the purpose of changing the beneficiary of the life insurance policy involved in this case?"

The jury answered both of these issues in the affirmative, and upon this verdict a decree was entered in favor of the complainant adjudging that she was the lawful

beneficiary in said policy of insurance and entitled to the proceeds thereof, and perpetually enjoining the defendant insurance company from paying any part thereof to any of the defendants.

The defendants Harry E. Bovay, Mary A. Bovay and Martha Jeanne Bovay duly excepted and filed their motion for a new trial, which was overruled, and they have appealed in error to this court.

They have filed two assignments of error: (1) That there is no evidence to support the verdict on either issue, that the verdict is against the weight of the evidence, and that the verdict evinces passion, prejudice and caprice on the part of the jury, and especially sympathy for the widow of the insured; and (2) that the court erred in submitting to the jury Issue No. 1 in the form in which it was submitted, instead of submitting it in the form requested by the defendants and so as to call upon the jury to answer as to the mental capacity of the insured on September 19th.

 The assignment of error that there is no material evidence to support the verdict requires a review of the evidence. The rule applicable to verdicts in jury trials in chancery cases is the same as that applicable to such trials in actions at law; that is, if there is any material evidence to sustain the verdict it is our duty to affirm the decree of the chancellor. Code, secs. 10579, and 9037; James v. Brooks, 53 Tenn., 150, 156. And in determining whether or not there is such evidence the strongest legitimate view of the testimony against the losing party is by this court taken as true. Meyer v. Cooper, 6 Tenn. App., 38, 40; Johnson v. Graves, 15 Tenn. App., 466, 475.

There is evidence in the record upon which we think the jury would have been warranted in finding the following facts to be true:

The insurance policy involved was issued to George B. Bovay on July 28, 1940, and his mother, Mrs. Mary A. Bovay, was named as the beneficiary therein. On September 30, 1941, he married the complainant Ruby Mae Bovay. He was at that time employed by the duPont Company at Wilmington, Delaware, as a procurement engineer. In June, 1942, he became ill with a throat trouble which was finally diagnosed as lympho sarcoma, or cancer of a gland of the throat. This was known to be a fatal malady, and upon the advice of the physicians his parents were advised of his condition and his mother, Mrs. Mary A. Bovay, went to Wilmington to see him.

On July 20 George had his wife, Ruby Mae Bovay, designated as the beneficiary in this insurance policy. His mother was present and agreed to the change, and said she thought "Boots" (Ruby) "was entitled to it." This change of beneficiary was approved by the company and endorsed on the policy.

George was under treatment in Wilmington, Philadelphia and New York until about the middle of September, when it was decided to bring him to Memphis where their families lived. They could not make the trip by train because it was necessary to tap his lungs at least twice a day to draw off the fluid so that he could breathe; so it was decided to bring him by plane. Mr. and Mrs. Chalmers Cullins, complainant's father and mother, went to Wilmington to make the trip home with them. Mr. Cullins came with George by plane and they arrived in Memphis on the night of September 16th. Dr. L. C. Sanders met the plane upon its arrival and George was taken in an ambulance to the Baptist Me-

morial Hospital. Complainant and her mother drove to Memphis by automobile and arrived there on the night of the 18th. When they arrived it was thought that George was dying. He was under the influence of an opiate and they thought he might not live through the night.

Dr. Sanders, who attended George from the time of his arrival in Memphis until he died, said: "We expected him to die any day; he was very weak at all times, and very short of breath."

On the 18th there was an operation for the removal of a gland from the chest wall for microscopic study. For this operation he was given pantapon, a morphine drug, which is described as a "severe" opiate in that "its action is quick and gives the patient a deep sleep." The hospital chart shows that on the morning of the 19th the patient's pulse was very rapid and thready, respiration shallow, and that he had passed a restless night; and in answer to the question whether they thought he was likely to die that day Dr. Sanders said "We expected him to die any day." He lingered in this condition, however until October 8th.

On the morning of September 18th, which was the second day after George's arrival in Memphis, his father, the defendant, Harry E. Bovay, went to the office of Mr. Gamble, the general agent of the defendant insurance company, and obtained a blank for a change of the beneficiary in the policy. Mr. Gamble was not in his office at the time, but the cashier furnished him the blank and filled it out for him so as to nominate Mrs. Mary A. Bovay, or in the event of her prior death, Martha Jeanne Bovay, as the beneficiaries in the policy. This paper purports to have been signed by George B. Bovay on September 19th, the day after the operation, in the

presence of T. N. Reid and was returned to Mr. Gamble's office, along with a pencil "memorandum" signed by Harry E. Bovay in which he stated that he was handing to him in person "your form 154R, nomination of beneficiary, properly filled out and signed by George Bently Bovay, witnessed by T. N. Reid," etc. This memorandum sets out at some length the circumstances under which the change of beneficiary had been made, and the reasons for making the change; and contains the statement that:

"On the morning of the 19th he (George) was rested, very normal mentally, and took the action he did of his own volition, and with his own determination. I told him we would do anything he wanted done.

"He directed that it be handled confidentially, even if we had to deal with the head office, and not through your office. So, now the responsibility is yours, and you and your company will be held responsible for any violation of this confidence."

This memorandum is not dated but Mr. Bovay says it was delivered to Mr. Gamble in person on September 21st.

Mr. Reid who witnessed this paper is a man 82 years old, somewhat deaf, and is now said by defendants to be senile. He had known the defendant Harry E. Bovay for many years, knew George, and when he was informed of George's condition he went out to the hospital to see him. He said that George was lying on his back, head thrown back, his mouth open, gasping for breath, and that he thought he was dying, and told his father that he thought he would not live through the day. He testified that he signed the designation of beneficiary as a witness at the request of Harry E. Bovay, and upon his statement that it was a trivial matter, and without

examining it to see what it was; that George did not sign it in his presence and did not request him to sign it; that he thought George was dying and that he did not think George recognized him.

Later, when the insurance company inquired of him whether George had signed the paper in his presence he stated that he did not, that he was not in a condition to sign anything, and that he had signed it at the request of Harry E. Bovay, and upon his representation that it was just a trivial matter, and he gave the insurance company an affidavit to that effect; and he went at once to see Harry E. Bovay and told him that his confidence had been abused, and he had witnessed George's signature without noticing what the paper was and upon his representation that it was just a formal matter. He says:

"I said 'Harry, you and I have been friends for a long time, and George and I were friends, and you have put me in a position that I don't like at all. You told me that this was a trivial matter, and I knew nothing in the world about it', and I told him I signed the thing as a witness because of my respect for you and my love and sympathy for George, and I didn't think it amounted to anything as you told me. And I said, 'Now you see the insurance company has written down here and wanted to know if George signed that paper in my presence, and I immediately walked over there and made affidavit that he did not, that he was in no condition to do it.' "

Mrs. Ruby Bovay was in the room when Mr. Reid came in and says she left the room, as she recollects, because Mr. Harry E. Bovay motioned her to leave. She was never informed that the application for the change of beneficiary in the policy had been made, and was not asked for the policy although it was known that she had

it in her possession at the hospital in a tin box in which she and her husband kept their valuable papers.

On the Sunday after George's death the complainant told Mrs. Mary A. Bovay that she wanted her to have a $500 bond out of George's life insurance, and Mrs. Bovay did not even then tell her that the beneficiary in the policy had been changed—"because George had said he wanted this kept confidential."

The relationship between George and his wife was most affectionate. Harry E. Bovay says theirs was one of the most beautiful love affairs he ever knew of; they had been sweethearts for six years before their marriage, and he had never heard of any friction between them.

For several years prior to George's death Harry E. Bovay had been in straightened circumstances. He had asked his two sons to help him pay his daughter's expenses in college but George had declined this request saying that his bills were too heavy for him to do anything about it. Mrs. Bovay said the last few years had been "desperate years" for her husband, and that his financial distress was still continuing.

█ In the light of these facts we do not think it can fairly be said that there is no evidence to support the verdict. Nor do we think the evidence shows that the jury were influenced by passion, prejudice or caprice, or by sympathy for the complainant in reaching their verdict.

The first assignment of error is therefore overruled.

█ The second assignment of error complains of the action of the chancellor in submitting to the jury the question whether George lacked the mental capacity to change the beneficiary in the policy on September 18 and 19 instead of limiting the inquiry to his mental

capacity on September 19, as requested by the defendants. We find no merit in the assignment. The finding of the jury that he did lack such mental capacity on the 18th and 19th necessarily includes the finding that he lacked such capacity on the 19th. It follows that if the issue had been submitted in the form requested by the defendants the answer of the jury would still have had to be "Yes." Assignment overruled.

In conclusion, we feel that the findings of the jury are well warranted by the evidence, and the decree of the chancellor is therefore affirmed in all respects at the cost of the plaintiffs in error and their surety.

Anderson, P. J., and Baptist, J., concur.