JOHN WYNNE & CO. v. W. A. ALLEN.

FRAUDULENT REPRESENTATION AS TO CREDIT OF A PERSON. *Action for.* The gist of an action for a false representation concerning the credit of another is fraud in defendant and damage to plaintiff. If the party making the representation honestly stated his own opinion, believing at the time that he stated the truth, he is not liable in this form of action, although the representation turned out to be entirely untrue. The rule is, that if a party represent as true that which he knows to be false, in such a way, and under such circumstances, as to induce a reasonable man to believe that it is true, and it is meant to be acted on, and the person to whom the representation has been made, believing it to be true, acts upon the faith of it, and by so acting sustains damage, such representation is fraudulent, and will sustain an action by the party damaged.

FROM HAYWOOD.

Appeal from the Circuit Court.

No record found.

DEADERICK, J., delivered the opinion of the court.

This is an action to recover damages for the false and fraudulent representations contained in a letter written by defendant, whereby plaintiffs were induced to give credit for goods sold to W. K. Bennett, who was insolvent.

The cause was tried in the Circuit Court of Haywood county, and resulted in a verdict and judgment for defendant, from which plaintiffs · have appealed in error to this court.

In the spring of 1869, W. K. Bennett, who was then a partner in the mercantile business with Geo. W. Bennett and W. B. Mann, sold his interest to Mann, Mann taking all the assets and assuming all the liabilities of the firm.

In the fall of 1869, W. K. Bennett, desiring to resume business, went to Cincinnati and contracted for goods of several merchants, but they, hearing he was involved in liabilities to Philadelphia merchants, as a member of the late firm of Mann, Bennett & Co., refused to deliver the goods contracted to be sold until satisfied upon this point.

W. K. Bennett returned to Brownsville, and procured from defendant the following letter, whereupon the goods were delivered to him:

"BROWNSVILLE, TENN., Oct. 26, 1869.
MESSRS. DUNCAN, FORD & ELDER,

*Gents,*—I learn from Major Bennett that there has been some rumors put in circulation concerning the indebtedness of the late firm of Mann, Bennett & Co.

I can say that I have all the claims of which I have any knowledge against said firm for collection, and all of which have been satisfactorily adjusted, and the major is not involved in the matter, the other part of the old firm having assumed the liabilities.

Respectfully, etc.,

W. A. ALLEN.

P.S.—The claims of which I have spoken were from Philadelphia, and amounted to about seven thousand dollars.             Respectfully,

W. A. ALLEN."

At the time this letter was written, it appears that W. K. Bennett was still liable for the partnership debts of Mann, Bennett & Co., and that judgment had been taken against the firm, including W. K. Bennett, for about six thousand dollars on those Philadelphia debts.

Some time after W. K. Bennett received his goods from Cincinnati, and after he had sold about one-third of them, having failed to pay plaintiffs anything, they sent an agent to collect or secure their debt, and while he was negotiating for that object, executions were issued upon these judgments and levied upon his goods. The control of these claims having passed in some way from Allen to other lawyers, the goods were sold, and plaintiffs lost their debt for the goods, sold as they allege, upon the faith of defendant's letter.

The question for determination is, whether the instructions of the court to the jury were correct.

In the leading case of *Pasley* v. *Freeman,* 3 T. A.,

51; 2 Smith's L. C., 157, it is held, that "a false affirmation made by defendant with intent to defraud the plaintiff, whereby plaintiff receives damage, is the ground of an action upon the case in the nature of deceit," and it is not necessary that defendant should be benefited by the deceit, or that he should collude with the person who is."

In the subsequent case of *Eyre* v. *Dunsford*, 1 East, 318, where the plaintiffs applied to defendant to know the character of Thompson, who was proposing to buy £1,000 worth of goods of plaintiff, defendant replied, "we have a credit lodged with us, by a very respectable house at Hamburg, for £12,000, which is at his disposal." The truth was, the instructions of the Hamburg house were, that "as soon as Thompson lodged goods to the amount of £36,000 in defendant's hands, he was to give him credit for £12,000."

Upon the representation made plaintiff sold the goods on credit, and Thompson soon thereafter failed.

It was held that the suppression of the condition upon which the £12,000 was to be advanced was a material suppression of the truth, and evidence sufficient for the jury to find fraud, which is the gist of the action.

In the case of *Haycraft* v. *Cressy*, 2 East, 92, it was held, that if a party applied to stated that he knew A. B. to be of good credit, and spoke from his own knowledge, and not from heresay, will not sustain an action for deceit if the representation turn out to be false, if it appears that such representation was made by defendant *bona fide*, and with a belief of the

truth of it, for the foundation of the action is fraud and deceit in defendant, and damage to plaintiff, and the assertion of his knowledge, in view of the subject matter, *i. e.*, the credit of another, was nothing more than the expression of a strong belief upon what was believed to be reasonable grounds.

The distinction between this case and the one in 1 East is that the defendant in one case believed to be true that which he asserted, while in the others he knew it was not true as he represented it.

In the notes to 2 Smith, L. C., 1868, citing numerous authorities, it is said, that in order to prove such fraud as will sustain this action, it is only necessary to show that what the defendant asserted was false within his own knowledge, and occasioned damage to the plaintiff; and so the law is laid down in Kerr on Fraud and Mistake, 53, 55, and 56.

There is nothing in the case in 13 Howard (U. S.), 200, in antagonism to the authorities above cited. Judge Catron, in that case, says that the gist of an action for a false representation concerning the credit of another is fraud in defendant and damage to plaintiff.

If the party honestly stated his own opinion, believing at the time that he stated the truth, he is not liable in this form of action, although the representation turned out to be entirely untrue.

So Chief Justice Marshall, in 7 Cranch., 69: " A representation concerning the credit of another, if honestly made, though actually false, does not render the person making it liable to an action." In the same

case he says: " That a fraudulent recommendation (and a recommendation known at the time to be untrue would be deemed fraudulent) would subject the person giving it to damages sustained by the person trusting to it seems now to be generally admitted."

The case of *Pasley* . v. *Freeman* recognizes and establishes this principle.

The result ·is that if a party represent as true that which he knows to be false, in such a way and under such circumstances as to induce a reasonable man to believe that it is true, and it is meant to be acted on, and the person to whom the representation has been made, believing it to be true, acts upon the faith of it, and by so acting sustains damage, such representation is fraudulent, and will sustain an action by the party damaged: Kerr on Fraud and Mistake, 53.

The charge of the court is in conformity with the views expressed in this opinion, and for that reason the cause is reversed, and remanded for a new trial.