SOUTHMOOR, INC. et al., Appellants (Complainants), v. BAPTIST MEMORIAL HOSPITAL et al. Appellees (Defendants).—444 S.W.2d 716.

Western Section. May 28, 1969.

Certiorari Denied by Supreme Court September 15, 1969.

W. C. Rodgers, Memphis, for appellants.

Emmett Marston and George B. O'Haver, Jr., Memphis, for Baptist Memorial Hospital.

Grady W. Agee and D. J. Smith, Jr. Memphis, for General Vendors, Inc.

William H. Luck, Memphis, for Virgyl Johnson.

MATHERNE, J. This is a suit in equity to set aside two deeds on the ground that the first deed was obtained by fraud and that the persons signing for the corporate grantor were not authorized so to act. The parties will be referred to as they appeared below, appellants as complainants, and appellees as defendants.

The complainants are Southmoor, Inc., and Southmoor Golf and Country Club, Inc., and several individual complainants who allege they were and still are the officers of the two corporate complainants. However, by order of the Chancellor the individuals were allowed to withdraw as individual complainants leaving only the two corporate complainants.

The defendants are General Vendors, Inc., the grantee of the complainant corporations; Baptist Memorial Hospital, the grantee of General Vendors, Inc.; Virgyl Johnson, Vice-President of Southmoor, Inc. and Parker Henderson, an officer of General Vendors, Inc.

The deed which was allegedly fraudulently obtained from the grantor is dated December 17, 1963, wherein Southmoor, Inc., conveyed approximately 42 acres of land to General Vendors, Inc. This deed is executed for Southmoor, Inc., by Virgyl Johnson, Vice-President, and G. E. Bennett, Secretary-Treasurer.

The complainants insist that the two named officers had no authority to execute the deed and that there was no meeting of the stockholders nor action by the stockholders of Southmoor, Inc., 'authorizing the sale. Complainants insist further that the deed was the result of a fraudulent scheme to deprive the corporate complainants of the land and that illegal and fictitious meetings were held in an attempt to sell this property.

The same property was conveyed by General Vendors, Inc., to defendant, Baptist Memorial Hospital, by deed dated June 10, 1965. Complainants allege that the officers of General Vendors, Inc., were a part of the fraudulent scheme to deprive corporate complainants of the real estate and that defendant, Baptist Memorial Hospital, purchased the property from General Vendors, Inc., with full knowledge of the fraudulent scheme and with full knowledge that the corporate complainants had been illegally deprived thereof.

The defendants answered denying all allegations of fraud or a scheme on their part or with anyone else as alleged in the Original Bill. Defendants alleged that the parties who signed the deed for Southmoor, Inc., were the proper officials so to act, and the named individuals complainants were not officers of either of said corporations. These defendants alleged that they were bona fide purchasers of the property for valid consideration and al-

leged that the complainants, with knowledge, had stood by while defendants expended considerable sums improving the property and that complainants are thus barred by laches.

This cause was tried before the Chancellor and a jury. The Chancellor submitted twelve issues of fact to the jury. These issues of fact and the finding of the jury in favor of the defendants on each issue are as follows:

## "ISSUES OF FACT

(1) Was December 10, 1963, the date fixed either by the charter, the by-laws or any official minutes of the stockholders as the date for the annual stockholders meeting of Southmoor Golf & Country Club?

Answer 'Yes' or 'No'; Yes

(2) Was there an especially called meeting of the stockholders of Southmoor Golf & Country Club held on December 10, 1963, after written notice to each stockholder?

Answer 'Yes' or 'No'; Yes

(3) Were Hugh Dancy, Virgil Johnson and G. E. Bennett the duly elected Directors of Southmoor Golf & Country Club, Inc. on December 17, 1963?

Answer 'Yes' or 'No'; Yes

(4) Did Hugh Dancy refuse to sign the deed conveying the title to the property of Southmoor, Inc., which was executed on December 17, 1963?

Answer 'Yes' or 'No': No

(5) Was a sale of all the real property belonging to Southmoor, Inc., authorized or ratified prior to December 17, 1963?

Answer 'Yes' or 'No': Yes

(a) By the Board of Directors of Southmoor, Inc.  Yes

(b) By the stockholder of Southmoor, Inc.  Yes

(c) By the stockholders of Southmoor Golf & Country Club, Inc.  Yes

(d) By the Board of Directors of Southmoor Golf & Country Club, Inc.  Yes

(6) Did General Vendors sustain a monetary loss or gain out of the transaction in question, and if so, how much?

Answer: Loss: $4,938.08

Gain: ————

(7) Did the defendant General Vendors, Inc., acquire the real estate in good faith belief that it was acquiring valid title to said property?

Answer 'Yes' or 'No': Yes

(8) Did the defendant Baptist Memorial Hospital acquire the real estate in good faith belief that it was acquiring valid title to said property?

Answer 'Yes' or 'No': Yes

(9) Did Virgil Johnson and G. E. Bennett have the authority of the Board of Directors of Southmoor, Inc., to execute the sales contract of November 11, 1963?

Answer 'Yes' or 'No': Yes

(10) Did Virgil Johnson and G. E. Bennett have the authority of the Board of Directors of Southmoor, Inc., to execute the deed of December 17, 1963?

Answer 'Yes' or 'No': Yes

(11) Have the rights of the defendants been prejudiced by reason of the delay on the part of the complainants in bringing this suit?

Answer 'Yes' or 'No': Yes

(12) Were the defendants or any of them guilty of any fraud against the complainants in connection with the transactions in question?

Answer 'Yes' or 'No'; No

Which defendants, if any? None

Thomas D. Bell
_____
Foreman''

The Chancellor entered an order that the foregoing verdict of the jury was approved and adopted, and the Original Bill as amended was dismissed.

■ By Assignment of Error VI complainants claim the Court erred in submitting to the jury Issue (6) concerning any gain or loss sustained by defendant, General Vendors, Inc., as result of this purchase and sale of the land. Complainants claim this issue is immaterial, and the Court erred in submitting same to the jury. It is true that immaterial issues should never be submitted to the jury. Gibson's Suits in Chancery, 5th Ed., Vol. I, Sec. 579. However, here the complainants clearly alleged fraud on the part of General Vendors, Inc., and its official, Parker Henderson, to the effect that Henderson along with defendant, Virgyl Johnson, were attempting to take

over the assets of Southmoor, Inc., for their own benefit and to the detriment of said corporation and its other stockholders. This issue as submitted to the jury might be material in that it shows General Vendors, Inc., lost money on the transaction. If the Court did err in submitting this issue to the jury, we hold the error is harmless. T.C.A. sec. 27-117.

Complainants by Assignment of Error VII claim the Lower Court erred in submitting Issues (7) and (8) on the ground that whether General Vendors, Inc., or Baptist Memorial Hospital acquired the real estate in good faith belief that they were acquiring valid title does not present a material question of fact or law in that both parties acted at their peril with full knowledge of all the facts and circumstances. Again we feel that considering the very broad and all inclusive allegations of fraud brought by complainants against these defendants that these two issues probably would shed some light as a finding by the triers of fact on these allegations of fraud. We hold the submission of Issues (7) and (8) was not error and should same be deemed error, it is also harmless. T.C.A. sec. 27-117.

By Assignment of Error IX the complainants claim the Chancellor erred in submitting to the jury Issue (11) as to whether the rights of defendants had been prejudiced by reason of delay on the part of complainants in bringing the suit. This involves the question of laches.

In the case of Moore v. Mitchell (1959), 205 Tenn. 591, 329 S.W.2d 821, our Supreme Court, in an opinion by Mr. Justice Swepston, reviewed the type cases which should be submitted to a jury in Chancery and held that cases of such a complicated and intricate nature involving mixed questions of law and fact not suitable for solution

by a jury, such as laches or estoppel, should not be tried by a jury. See also Gibson's Suits in Chancery, 5th Ed., Vol. 1, Secs. 578, 582. We will therefore treat this Assignment of Error as good. However, this holding does not require a reversal in that the effect of same, at the most, would be only to deprive defendants of their defense of laches on the part of complainants.

All other Assignments of Error claim that the finding and holding of the jury and the Chancellor on each of the other issues of fact was error.

■ If there is any material evidence which reasonably tends to support the findings of the jury, such findings, approved by the Chancellor, are conclusive on the appellate court, and it must disregard all countervailing evidence. National Life & Accident Ins. Co. v. American Trust Co. (1933) 17 Tenn.App. 516, 68 S.W.2d 971; Bovay v. Bovay (1943) 27 Tenn.App. 332, 181 S.W.2d 157; Davis v. Mitchell (1943) 27 Tenn.App. 182, 178 S.W. 2d 889.

■ Where action to set aside a deed on the ground of fraud, undue influence, and abuse of confidential relationship is tried by a jury in Chancery Court, the appellate court will not inquire into the preponderance of the proof but only whether there was any material evidence to support the verdict of the jury. Moore v. Mitchell, supra; T.C.A. sec. 21-1016.

It is undisputed that Southmoor, Inc., and Southmoor Golf and Country Club, Inc., were originally organized as individual corporations. Southmoor, Inc., owned the tract of land involved in this litigation. This tract of land constituted the only asset of Southmoor, Inc. In July of 1963 Southmoor Golf and Country Club, Inc.,

obtained and owned all the outstanding common stock of Southmoor, Inc.

The record reveals that at a meeting of the Board of Directors of Southmoor Golf and Country Club, Inc., on July 8, 1963, a resolution was passed to the effect that the officers and directors of Southmoor Golf and Country Club, Inc., would also be the officers and directors of Southmoor, Inc. At this time Southmoor Golf and Country Club, Inc., was the sole owner of all the common stock of Southmoor, Inc.

There is also evidence, by the testimony of the officers of the corporation who were present, that a meeting was held of the Board of Directors of Southmoor Golf and Country Club, Inc., on November 11, 1963, at which meeting it was agreed that the land owned by Southmoor, Inc., would be sold to General Vendors, Inc., and that Southmoor Golf and Country Club, Inc., would lease the land from General Vendors, Inc. As result of this meeting, a deed was executed by Southmoor, Inc., conveying the property to General Vendors, Inc., the deed bearing date December 1, 1963, and executed by Otto F. Buddenbohm, President, and G. E. Bennett, Secretary-Treasurer. There was also executed a lease whereby Southmoor Golf and Country Club, Inc., leased this property back from General Vendors, Inc., the lease is not dated but was executed by Otto F. Buddenbohm, President, and G. E. Bennett, Secretary-Treasurer of Southmoor Golf and Country Club, Inc. The above referred to deed was returned to be re-executed by the title examiners for the reason that the Secretary-Treasurer signed at the wrong place. This proof establishes that Otto F. Buddenbohm, one of the original complainants, did act as an official and

director of both corporations after the July 8, 1963, meeting.

There is evidence in the record that the regular annual meeting of the stockholders of Southmoor Golf and Country Club, Inc., was held on December 10, 1963. At this meeting the sale of the property to General Vendors, Inc., as passed by the Board of Directors of the corporation on November 11, 1963, was ratified and approved. New officers were elected at this meeting namely Hugh Dancy, President; Virgyl Johnson, Vice-President; and G. E. Bennett, Secretary-Treasurer. These same three individuals were also elected as the Board of Directors of Southmoor Golf and Country Club, Inc. As result of the resolution adopted on July 8, 1963, these same individuals would constitute the Board of Directors and officers of Southmoor, Inc.

It was after this meeting on December 10, 1963, when these new officers were elected, that the deed in question dated December 17, 1963, was executed by Virgyl Johnson, Vice-President, and G. E. Bennett, Secretary-Treasurer of Southmoor, Inc. There is evidence in the record that the newly elected president, Hugh Dancy, did not refuse to execute the deed, but he was unavailable at the time of the signing of the deed and that the other two officials executed same. These officials testified that they were merely carrying out the previously adopted resolution to make this sale.

The record clearly establishes that Southmoor Golf and Country Club, Inc., experienced extreme financial difficulties from the time it was first organized. Repeated efforts were made to sell the property prior to the sale to General Vendors, Inc. The Board of Governors set up to

operate the club under the lease back from General Vendors, Inc., was unable to operate same in a profitable manner. No rent was ever paid General Vendors, Inc., under the lease agreement. General Vendors, Inc., after considerable effort sold the property to defendant, Baptist Memorial Hospital.

The record reveals that the Charters of Southmoor, Inc., and Southmoor Golf and Country Club, Inc., were revoked by the State of Tennessee on September 29, 1964; and, the Charters have not been reinstated.

This record is very voluminous, and there are many pages thereof relating to various sales of stock, the consideration received for stock, and other matters which complainants apparently thought constituted a part of the alleged scheme to take over the corporations. However, these matters are not assigned as error in this Court, and we do not deem it necessary to review all that evidence as revealed in the record.

Complainants contend that the only way the land belonging to Southmoor, Inc., could have been legally sold would be for the Board of Directors of Southmoor, Inc., to vest stock of Southmoor, Inc., in individual stockholders and provide for a stockholders' meeting with notice and with a majority vote on such sale. Complainants contend since this was not done the sale was void.

Powers specifically granted to every private corporation in the State of Tennessee is set out in T.C.A. sec. 48-117, which statute was in effect at the time of all these transactions. Sub-section (8) provides as follows:

"(8) Subject to such limitations, if any, as may be contained in the certificate of incorporation or any

amendment thereto, to guarantee, purchase, own, hold, sell, transfer, assign, mortgage, pledge or otherwise dispose of and deal in the stocks, bonds, securities or evidences of indebtedness of other corporations, public or private, of this or any other state or government, including bonds or securities of any state or *political subdivision thereof; and while owner of such stock to exercise all the rights and privileges of ownership, including the right to vote thereon;* provided, however, that this section shall not be construed to grant to any corporation the power to create unlawful monopolies or combinations in restraint of trade.'' (Emphasis supplied)

■ There is no limitation of these powers in the Charter of either corporation, and the management of the affairs of each corporation was vested in its Board of Directors. We therefore conclude that when Southmoor Golf and Country Club, Inc., became the sole owner of all the outstanding and issued common stock of Southmoor, Inc., that the Board of Directors of Southmoor Golf and Country Club, Inc., was the proper party to vote the common stock of Southmoor, Inc.

■ Complainants allege further that the sale violated the provisions of T.C.A. sec. 48-509 in that this was a sale of all the assets of Southmoor, Inc., and was done without an affirmative vote of a majority of the stockholders of record entitled to vote on a proposal to sell, given at a stockholders' meeting called for that purpose with notice thereof to each stockholder of record. We do not agree that this statute was violated in that the only stockholder of record was Southmoor Golf and Country Club, Inc., the sole owner of all the common stock of Southmoor, Inc. There is evidence in the record that the

Board of Directors and officers of Southmoor Golf and Country Club, Inc., were the same individuals as the Board of Directors and officers of Southmoor, Inc., and that these individuals had due notice of the meeting held on November 11, 1963, when the proposal to sell the land of Southmoor, Inc., to General Vendors, Inc., was adopted and also had due notice of the meeting on December 10, 1963, when the proposal to sell was ratified and adopted by the stockholders of Southmoor Golf and Country Club, Inc.

It results that there is an abundance of material evidence in the record to sustain the verdict as rendered by the jury and approved by the Chancellor. Therefore, all Assignments of Error other than Assignment of Error IX are overruled, the Decree of the Chancellor dismissing this suit is affirmed, and this suit is dismissed. Cost of this appeal is adjudged against the appellants; cost below to remain as there adjudged.

Carney and Taylor, JJ., concur.