W. Warren GRAHAM and wife, Barbara G. Graham, Plaintiffs-Appellees,

v.

FIRST AMERICAN NATIONAL BANK, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Nov. 30, 1979.

Certiorari Denied by Supreme Court Feb. 19, 1980.

Tom H. Williams, Jr., Nashville, for plaintiffs-appellees.

D. L. Lansden, Justin P. Wilson, Waller, Lansden, Dortch & Davis, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

On March 20, 1978, plaintiffs filed their complaint seeking compensatory and punitive damages from defendant and alleging that they had been induced to purchase a condominium by false and fraudulent misrepresentations of the agents of defendant. This case was tried before the Court and a six-person jury on special interrogatories. The interrogatories and answers are as follows:

(1) Did the defendant fraudulently misrepresent the quality of the construction of the condominium unit sold to plaintiffs? Yes.

(2) Did the defendant breach its written warranty agreement it had with the plaintiffs? Yes.

You should not answer the next question (question 3) unless you have answered at least one of the above questions (1 or 2) "yes."

(3) Are the plaintiffs entitled to compensatory damages? Yes. If so, in what amount? $13,380.

You should not answer the next question unless you have answered question 1 "yes."

(4) Are the plaintiffs entitled to punitive damages? Yes. If so, in what amount? $10,000.

From so much of the judgment as awards punitive damages the defendant appeals and presents one issue: "whether there is any material evidence upon which an award of punitive damages against the defendant First American National Bank can be made or sustained."

The defendant acquired a partially completed condominium development known as Woodlake, located in Davidson and Wilson Counties, Tennessee. Acquisition was the result of foreclosure because of default in payment of a loan by the original developers. At the time the Bank foreclosed and became the owner of Woodlake, the development was between eighty-five and ninety-five percent completed. The defendant, acting as its own general contractor, completed construction of unit 118–B and sold it to plaintiffs.

Plaintiffs had made at least one trip to Woodlake prior to signing the sales contract on June 26, 1976. On their first trip, they were furnished a sales brochure which listed various features of the development. The brochure represented the development to be of "quality construction," and one of defendant's sales agents told plaintiffs that the reason the units were quiet was because of the excellent construction and fire walls between each unit.

Plaintiffs, after signing the sales contract on June 26, 1976, moved into the unit on July 17, 1976, and lived there for some ten (10) weeks until the "closing" on September 29, 1976. Each of the plaintiffs testified that prior to the closing they knew about each of the defects set out in their complaint. Mr. Graham was asked on cross examination about each of the defects in the complaint separately and, as to each of them, testified that he knew of the defect prior to "closing."

■ This case was tried before the Chancellor with a jury, and "[i]f there is any material evidence which reasonably tends to support the findings of the jury, such findings, approved by the Chancellor, are conclusive on [this Court], and [we] must disregard all countervailing evidence." *Southmoor, Inc. v. Baptist Memorial Hospital*, 60 Tenn.App. 148, 156, 444 S.W.2d 716, 719–20 (1969) (citations omitted).

In determining if there is material evidence to support the verdict, we are required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. . . . If there is any material evidence to support the verdict, it must be affirmed. *State ex rel. Anderson v. Evatt*, 63 Tenn. App. 322, 325, 471 S.W.2d 949, 951 (1971) (citations omitted).

■ Plaintiffs admit that for them to be entitled to punitive damages, they must prove actionable fraudulent misrepresentation by defendant. They admit that in order to maintain a successful cause of action for fraudulent misrepresentation there must be proof of a false representation of an existing or past material fact. The false representation must have been made knowingly, without belief in its truth, or recklessly. Some person must have reasonably relied on it and suffered some damage as a result of the reliance. *Edwards v. Travelers Insurance*, 563 F.2d 105, 110–14 (6th Cir. 1977).

[I]f a party represent as true that which he knows to be false, in such a way and under such circumstances as to induce a reasonable man to believe that it is true, and it is meant to be acted on, and the person to whom the representation has been made, believing it to be true, acts

upon the faith of it, and by so acting sustains damage, such representation is fraudulent, and will sustain an action by the party damaged. . . . *Wynne v. Allen*, 7 Baxt. 312, 66 Tenn. 312, 317 (1874) (citation omitted).

Plaintiffs rely for the false representations upon the statement in the brochure about "quality construction," and the statement of one of defendant's sales representatives that the unit was of "excellent construction." That the unit plaintiffs purchased was not of quality construction or excellent construction is not open to argument. There was a long list of defects, including plumbing problems, warping dry wall, cracking bathtubs, etc.

But even if we assume that plaintiffs have proven fraudulent misrepresentation by agents of defendant, they are not entitled to punitive damages. The contract entered into between plaintiffs and defendant on June 26, 1976, was an executory contract of sale, i. e., certain things remained to be done before delivery of deed and passing of title.

Plaintiffs each testified that before the contract was fully executed on September 29, 1976, they were aware of each of the defects set out in their complaint filed on March 10, 1978. Nevertheless, their contention is that even though they were aware of these defects, they are entitled to punitive damages from defendant since they were obligated to go forward with the contract. With this contention we cannot agree. If defendant was guilty of fraud in the inducement of the contract, plaintiffs, at their option, were entitled to a rescission. See *Smith v. Greaves*, 15 Lea. 459, 83 Tenn. 459 (1885). Here they went forward with the contract and, by so doing, waived their right to rescind the contract. "In the case of executory contracts, waiver of the right to rescission operates as a waiver of the right to maintain an action for damages for the fraud . . . ." 37 C.J.S. *Fraud* § 69 (1943). There is good reason for this rule. To hold otherwise would permit recovery for a purely self-inflicted injury. See *Ankeney v. Brenton*, 214 Iowa 357, 238 N.W. 71, 75 (1931).

In *Wells v. Holley*, 145 Tenn. 345, 235 S.W. 430 (1921), Wells entered into an executory contract with Holley to purchase a farm containing 136 acres. The contract of sale contained a forfeit clause of $500.00 should either of the parties fail to comply with the contract. Prior to completion of the contract by execution of the deed, the land was surveyed, and the discovery was made that the farm contained only 108 acres, or some 28 acres less than had been represented to Mr. Wells. Wells was made cognizant of this fact, and he insisted that he had purchased the farm by the acre and not by the tract. After considerable discussion Wells "agreed to accept the deed, paid the money, and executed his notes . . ." *Id.* at 348, 235 S.W. at 430. Wells testified that he did those things "under protest, and with notice to Mr. Holley that he was reserving the right to bring suit against him for damages for misrepresentations made to him with respect to the quantity." *Id.* While there was no finding of fraud in the inducement, the court stated:

> Placing the proposition upon the ground as if an actual fraud had been committed, he [Wells] would not be entitled to recover damages, because no damages resulted to him, since he had the right and option to refuse to carry out his trade. There must be some damage before fraud can be made the basis of an action. *Id.* at 348–49, 235 S.W. at 431.

Plaintiffs, in their brief, say three crucial events occurred prior to their moving to Woodlake: (1) they had become legally obligated to purchase the condominium unit, (2) they had paid defendant the sum of $500.00, and (3) they had sold their home. They had not become legally obligated to purchase the condominium unit since, at their option, they had a right to rescind. *See Smith v. Greaves, supra.* While they had paid defendant the sum of $500.00, the June 26 sales contract shows this $500.00 had been paid into escrow, and they would have been entitled, upon rescission, to the return of this money. We have searched this record and find no showing

that plaintiffs received anything less than the full value of the condominium they sold prior to moving to Woodlake. In *Simon v. Goodyear Metallic Rubber Shoe Co.*, 105 F. 573 (6th Cir. 1900), *quoted in Wells v. Holley*, 145 Tenn. at 349–52, 235 S.W. at 431–32, the court said:

> The rule of damages in an action by one who has been fraudulently induced to make either a contract of sale or purchase, it must follow that if one, after full knowledge of the fraud and deceit by which he has been induced to make a sale of property, goes forward and executes it notwithstanding such fraud, the damage which he thereby sustains is voluntarily incurred. The maxim volenti non fit injuria has application to all loss resulting from the voluntary execution of a nonobligatory contract with full knowledge of the facts which render it voidable. Fraud without damage is not actionable. If the fraud be discovered while the contract is wholly executory, the party defrauded has the option of going on with it or not, as he chooses. If he executes it, the loss happens from such voluntary execution, and he cannot recover for a loss which he deliberately elected to incur. *Id.* at 579. (citations omitted).

For the reasons set out, the judgment awarding punitive damages is reversed. Costs are taxed to plaintiffs.

SHRIVER, P. J., concurs.

TODD, J., dissents.

TODD, Judge, dissenting.

I respectfully dissent from the conclusion reached by my respected colleagues.

I take no issue with the authorities cited, but I disagree with the interpretation of the authorities and their application to this case.

First, I do agree that an injured party cannot recover for self-inflicted damages. However, the mere fact *that part* of a plaintiff's damages is self-inflicted does not relieve the wrong doer of liability for *that part* of the damages sustained without fault of the plaintiff.

The general application of the rule applied by my colleagues would produce such a result as the following:

While A is stopped at a red traffic signal, he is struck from the rear by B who is driving while intoxicated. A suffers a broken leg and numerous lacerations. His leg is set and properly treated, but he refuses treatment for the lacerations as a result of which infection produces permanent injuries. Under the rule announced in the principal opinion, A could not collect damages for his broken leg because he neglected his other injuries.

Could this possibly be the law? I cannot agree that it is or could be the law.

Of course, A cannot collect for the aggravation of his damages resulting from his own neglect, but he must be allowed to collect for that part of his damages which he sustained by the negligence of B and independently of his (A's) own neglect.

Secondly, I agree with my colleagues that the plaintiffs herein are entitled to no compensatory damages (ergo no punitive damages) predicated upon damages sustained because they saw fit to "go through with the deal." However, I cannot agree that this disentitles plaintiffs to the damages sustained prior to and independently of their decision to "go through with the deal."

Prior to their knowledge, plaintiffs entered into a bona fide contract with defendant, induced by fraudulent representations. By so doing, plaintiffs acquired a vested right to the benefit of their bargain—not according to the true facts ultimately discovered, but according to the facts as falsely represented by defendant. If plaintiffs had elected to rescind, they nevertheless would have suffered damage, for they would thereby have been deprived of the benefit of the bargain they made. Also, even if they had rescinded, plaintiffs would have suffered other damages involved in the relinquishment of their former home, expense and loss in obtaining another suitable home, and other incidental expense and inconvenience.

Stated in other terms, a perpetrator of a fraud must not be permitted to place the victim of his fraud on the horns of a dilemma, saying to him:

Either rescind and relieve me from all liability or "go through with the deal" and relieve me of all liability. This is not and cannot be justice.

If all damages were before this court on appeal, the proper judgment would be that plaintiffs recover reasonable compensation for all losses and damages which they would have sustained if they had rescinded when the fraud was discovered, omitting any *further* damages sustained because they elected to "go through with the deal."

Since only punitive damages are before this Court, and since the compensatory damages were fixed upon a partly incorrect basis, a suitable remittitur should be suggested or the cause should be remanded for a trial anew on the issue of the proper amount of punitive damages.