IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 29, 2000 Session

## CAROLYN STRANGE v. RONNIE W. PETERSON, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. 105496-1; The Honorable Walter L. Evans, Chancellor**

———————————

**No. W1999-00489-COA-R3-CV - Filed January 11, 2001**

———————————

This case arises out of the sale of a home. The Appellants claim that the Sellers fraudulently or negligently misrepresented the condition of the home. Specifically, the Appellants claim that the Sellers failed to disclose a water problem located in the crawlspace underneath the home. For the following reasons, we affirm the finding of the trial court that the Sellers are not guilty of fraudulent or negligent misrepresentation.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

James E. Conley, Jr., for Appellant

Douglas A. McTyier, for Appellees

### OPINION

#### Facts and Procedural History

Mr. and Mrs. Peterson owned a home at 8755 Cherry Springs Drive in Memphis, Tennessee. Construction of the home was completed in October 1987. Sometime in 1988, Mr. Peterson found a hole filled with water in the crawl space underneath the house. There is differing testimony about the size of the hole that Mr. Peterson found underneath his house. Mr. Peterson testified that the hole was approximately 1.5 feet deep and 1.5 feet wide. In contrast, a neighbor who also went under the house with Mr. Peterson testified that the hole was two to three feet in diameter. There is also a point of contention regarding how the hole was drained. Mr. Peterson testified that he used a sauce pan for about an hour and a sump pump for about 30 seconds to completely drain the hole of water. A neighbor, however, testified that Mr. Peterson used the sump pump for over a day to drain the hole.

Mr. Peterson testified that after he drained the water out of the hole, he checked on the hole a few times to make sure it was drying up. After approximately two weeks of waiting, Mr. Peterson did not notice any more water accumulation in the hole. Mr. Peterson then filled the hole with the dirt that was piled up beside it. From that point forward, Mr. Peterson checked underneath the house a few times, and he never noticed any other water or holes.

On November 8, 1992, William and Carolyn Strange entered into a real estate contract to purchase the home in question from the Petersons. Mr. and Mrs. Strange had a home inspection performed before the closing, but the inspector reported no signs of a problem in the crawlspace underneath the house.

In December 1994, Mr. and Mrs. Strange discovered a small crack in the mortar above the front door of the house. The crack was three-sixteenths of an inch wide and it ran two to three feet in length. Over time, the crack above the door got larger. In July 1995, the crack was about an inch wide, and another crack had begun to develop at the bottom of the brick near the door. A short time later, the entire porch collapsed, and the brick facing fell off the front of the house.

The Stranges retained a civil engineer who opined that over time water running under the house got under the block wall footing at the front of the house and washed dirt out from underneath that part of the slab supporting the front porch. The engineer further testified that a situation where there was a pool of water several feet deep and two feet across that could not be emptied is consistent with the presence of ground water. The Stranges paid $3,450.00 for work performed to control the ground water underneath the house and $22,725.00 for repairs to the front porch and for the replacement of all the brick on the front of the house.

The Stranges emphasize that the real estate contract entered into by the parties provided that the sellers covenant and represent that they have no actual knowledge of any defects in the condition of the property. Moreover, the Stranges claim that they relied on the Seller's Disclosure Statement, in which the Petersons denied that there had ever been any water leakage, accumulation, or dampness within the basement or crawl space and further denied that there had been any water or dampness problems in the crawl space.

The case was tried on October 29, 1998, and November 2, 1998. The trial court found that the Stranges had not carried their burden of proof with regard to fraudulent or negligent misrepresentation and thus ruled for the Petersons.

**Standard of Review**

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the findings below. See Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); T.R.A.P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. See

Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. See NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

### Law and Analysis

The Appellants present two issues for our review. First, the Appellants claim that the trial court erred in failing to find the Appellees guilty of fraudulent misrepresentation. Second, the Appellants cite error in that the trial court failed to find the Appellees guilty of negligent misrepresentation. We will examine each issue in turn.

In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) the plaintiff reasonably relied on the misrepresented material fact; and 6) the plaintiff suffered damages as a result of the misrepresentation. See Graham v. First Am. Nat'l Bank, 594 S.W.2d 723, 725 (Tenn. Ct. App. 1979) (citing Edwards v. Travelers Ins. Co., 563 F.2d 105, 110-14 (6th Cir. 1977)).

Liability for negligent misrepresentation will result if defendant is acting in course of his business, profession, or employment, or in a transaction in which he has pecuniary interest, and defendant supplies faulty information meant to guide others in their business transactions; defendant fails to exercise reasonable care in obtaining or communicating information; and plaintiff justifiably relies upon the information. See Robinson v. Omer, 952 S.W.2d 423 (Tenn. 1997) (citing Restatement (Second) of Torts § 552). In order to prevail in a suit for negligent misrepresentation, the plaintiffs must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiffs justifiably relied on the information. See Merriman v. Smith, 599 S.W.2d 548, 556-57 (Tenn. Ct. App. 1979).

The Stranges primarily rely on the Seller's Disclosure Statement which was signed by the Petersons on October 18, 1992. The Seller's Disclosure Statement, however, was not signed by the Stranges. In paragraph nine of the Seller's Disclosure Statement, part (b) asks, "has there ever been any water leakage, accumulation, or dampness within the basement or crawlspace?" The Petersons checked "no" to this question. Additionally, part (c) of paragraph nine asks, "have there been any repairs or other attempts to control any water or dampness problem in the basement or crawlspace?" The Petersons also checked "no" to this question. In addition, at the bottom of the Seller's Disclosure Statement, there is a section entitled "Receipt and Acknowledgment of Buyer." This section states, in large letters, that:

> 1. I have carefully inspected the property. I have been advised to have the property examined by professional inspectors. I acknowledge that neither any broker or agent involved in this transaction is an expert at detecting or repairing physical defects in the property.
>
> 2. I understand that unless stated otherwise in my contract with seller, the property is being sold in its present condition only without warranties or guarantees of any kind by seller or any broker or agent. I state that **no representations concerning the condition of the property are being relied upon by me except as disclosed above or stated within the sales contract.**

Moreover, there was a Seller's Disclosure Report dated November 7, 1992, which was signed by both the Stranges and the Petersons. In the Seller's Disclosure Report in part five, the question states, "are you (owner) aware of any of the following conditions? If so, check "yes." Two of the relevant conditions listed were "previous flooding" and "improper drainage." The Petersons did not check either of these boxes. At the bottom of the Seller's Disclosure Report, there was a statement in large, bold letters which stated that "buyer may wish to obtain professional advice and/or inspections of the property and to provide for appropriate provisions in a contract between buyer and seller(s) with respect to any advice/inspections/defects."

After carefully reviewing the record in this case, we agree with the trial court that the plaintiffs have failed to carry their burden regarding fraudulent or negligent misrepresentation. We find that the one-time occurrence of a water-filled hole in the crawlspace is not enough to amount to "water leakage" or "accumulation." Moreover, the one-time occurrence of a small amount of water does not amount to "previous flooding" or "improper drainage," which would require disclosure.

After Mr. Peterson removed the water from the hole it dried up, and the Petersons never saw any other water or holes under the house.[1] Since there were no further holes or water underneath the house while the Petersons owned the property, Mr. Peterson was never concerned about it again and testified that he even forgot about the incident and did not remember it when he prepared the disclosures. A trial judge's findings as to credibility of witnesses is entitled to great weight. See Tenn-Tex Properties v. Brownell-Electro, Inc., 778 S.W.2d 423, 426 (Tenn. 1989). Thus, we find that the representations made by the Petersons were not made knowingly, recklessly, or without belief in their truth. See Graham v. First Am. Nat'l Bank, 594 S.W.2d 723, 725 (Tenn. Ct. App. 1979) (citing Edwards v. Travelers Ins. Co., 563 F.2d 105, 110-14 (6th Cir. 1977)). Moreover, the Petersons and were not guilty of a violation of reasonable care in communicating any information

---

[1] The testimony of the Stranges' engineer also lent credibility to Mr. Peterson's assertion that after the hole dried up, he never saw any other water or holes under the house. At trial, the engineer was asked, "would it be possible at a dry time of the year for someone to look underneath the house and not see any water?" The engineer responded, "absolutely."

to the Stranges.  See <u>Merriman</u>, 599 S.W.2d 548,  (Tenn. Ct. App. 1979).  In addition, from the time the Stranges moved into the home in late 1992 until the first indication of any problem in December of 1994, Mr. Strange never observed any water or unusual dampness under the house.  This is over six years from the initial instance when Mr. Peterson found the water-filled hole in the crawlspace underneath his house.  No reasonable homeowner untrained in such matters could reasonably be expected to assess or foresee a serious groundwater problem stemming from such an insignificant event.  If we were to hold otherwise, we would subject homeowners to potential liability for every problem that developed years after the sale of their home.  It is unfortunate that the Stranges encountered such a costly problem with groundwater running underneath their home.  Nevertheless, we must find, under the unique facts of the instant case, that there was no fraudulent or negligent misrepresentation.

## Conclusion

Accordingly, for the aforementioned reasons, we hereby affirm the judgment of the trial court.  Costs on appeal are taxed to the Appellant, Carolyn Strange, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE